## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

**GLADYS SERRANO,**

    **Plaintiff,**

        **v.**                                **CIVIL NO. 12-1055 (PAD)**

**PATRICK R. DONAHOE,**

    **Defendant.**

## OPINION AND ORDER

Gladys Serrano sued Patrick R. Donahoe in his official capacity as Postmaster General, claiming to have been discriminated and retaliated against in her employment with the United States Postal Service in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000, *et seq*., and the Age Discrimination in Employment Act, 29 U.S.C. § 623, *et seq*. Before the Court is Donahoe's "Motion for Summary Judgment," – Docket No. 60 – which Serrano opposed at Docket No. 64. Donahue replied at Docket No. 67. For the reasons explained below, the motion is GRANTED and the case is DISMISSED.

### I.       STANDARD OF REVIEW

Serrano initiated this action in 2012. Following discovery and the pretrial conference, the Court authorized Donahue to move for summary judgment. Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is need for trial. Mesnick v. General Electric Co., 950 F. 2d 816, 822 (1st Cir. 1991).

Serrano v. Donahoe
Civil No. 12-1055 (PAD)
Opinion and Order
Page 2

The party moving for summary judgment bears the initial responsibility of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A factual dispute is "genuine" if it could be resolved in favor of either party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  It is "material" if it potentially affects the outcome of the case in light of applicable law.  Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).  As to issues on which the nonmovant has the burden of proof, the movant need to no more than aver absence of evidence to support the nonmoving party's case.  Celotex Corp., 477 U.S. at 325; Mottolo v. Fireman's Fund Insurance, 43 F.3d 723, 725 (1st Cir. 1995).

Once the moving party has satisfied this requirement, the nonmoving party has the burden of presenting facts that demonstrate a genuine issue of material fact for trial.  LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).  All reasonable factual inferences must be drawn in favor of the party against whom summary judgment is sought.  Shafmaster v. United States, 707 F.3d. 130, 135 (1st Cir. 2013).

To resist summary judgment, the nonmovant must do more than show some metaphysical doubt as to a material fact.  Matsushita Elec. Inds. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative will not suffice to ward off a properly supported motion for summary judgment.  Nieves-Romero v. United States, 715 F.3d 375, 378 (1st Cir. 2013).

Careful record review reflects absence of genuine dispute as to the facts identified in the section that follows.  Based on those facts, the defendant is entitled to judgment as a matter of law.

<u>Serrano</u> v. <u>Donahoe</u>
Civil No. 12-1055 (PAD)
Opinion and Order
Page 3

## II.      <u>FACTUAL FINDINGS</u>[1]

### A.  <u>General Background</u>

Serrano was born in 1951 (Docket No.1 at ¶ 7).  In 1994, she began working for the Postal Service.  SMF ¶ 8.  In or about 2008, she was appointed sales representative (business development representative).  <u>Id.</u> at ¶ 9.  Originally, the Puerto Rico sales team was made up of two females and two males.  In or about 2008, Serrano and the other female were in their late fifties; one male was in his thirties and another male was in his forties.   The other female was later reassigned due to a Postal Service reduction-in-force.  <u>Id.</u> at ¶ 13.

José A. Borrero became Serrano's supervisor in or about 2009.  <u>Id.</u> at ¶ 10.  He is in his late forties.  <u>Id.</u> at ¶ 13.  His duty station was Miami, Florida but he visited the Puerto Rico office approximately once a month.  While in Florida, he communicated with the Puerto Rico sales team via telephone or e-mail. <u>Id.</u> at ¶ 11.  As Serrano's supervisor, Borrero prepared three evaluations of her.  All three were good, with no negative comments. <u>Id.</u> at ¶ 15.

### B.  <u>Borrero's Management Style</u>

Borrero's management style was generally authoritarian, tough and aloof, but he behaved that way towards the entire sales team. <u>Id.</u> at ¶ 12.[2]  In Serrano's view, however, Borrero was friendlier to the male sales team employees in that he would touch them when he greeted them, and socialized with them when he was in town.  She would have thought it inappropriate if Borrero

---

[1] Serrano denied ¶¶ 12, 16, 24, 25, 26, 27, 29, and 28 of Donahue's "Statement of Facts in Support of Motion for Summary Judgment" ("SMF") (Docket No. 59 at p. 8).  Those paragraphs are properly supported by the record and thus, deemed uncontested.

[2] Although the Court assumes Serrano intended to deny this fact, she did not make reference to the specific numbered paragraph as required by Local Rule 56(c).  In any event, the statement is properly supported by the record.

had touched her or attempted to socialize with her outside the office, and would have declined if he had asked. Id. at ¶ 18.[3]

Once, Borrero shouted to Serrano over the speaker phone to perform a particular task the way he had instructed her to do it, not the way she did it. Employees worked in cubicles such that conversations conducted in person, as well as over a speakerphone, could be overheard. Another employee overheard the conversation between Borrero and Serrano. Serrano did not hear Borrero raise his voice or shout at male employees but was not in the office every time Borrero spoke with them. Id. at ¶ 17.

During a sales team meeting Serrano confronted Borrero about how he wanted sales conducted. In her view, Borrero was annoyed and became hostile with her after that incident. She believes Borrero became annoyed with her because she "confronted him in the presence of the other two employees… and since he was the boss, he didn't allow that." Id. at ¶ 14.

Borrero would sometimes give out gift certificates or "vouchers," the value of which was based on each employee's sales numbers for a particular period. Serrano recalled one time when the two male employees received white envelopes and she received a gold metal star paper weight, but does not know what was in the envelopes given to the men or the value of the paper weight she received. Id. at ¶ 16.

## C. **Retirement and Sick Leave**

Around March 25, 2011, Serrano became aware that her position had been eliminated, and that she would be transferred to Miami. She decided to retire and turn in her retirement papers

---

[3] In her opposition, Serrano qualified this statement (Docket No. 64 Exh.1 at p. 2). However, the information she provided does not contradict the statement. Accordingly, SMF ¶ 18 will be considered admitted.

before April 25, 2011.[4]  Then, she submitted 2 applications for sick leave.  On or about March 31, 2011, she requested leave to cover absences from March 31, 2014 to April 14, 2011; and on April 29, 2011, to cover absences from May 2, 2011 to May 13, 2011.  In both instances, she included a doctor's note stating "rest."

On April 29, 2011, Borrero received an official e-mail regarding documentation to support employee sick leave requests. According to the email:

> [w]ith many employees taking the [Voluntary Early Retirement] you may experience a spike in unscheduled sick leave.  It is recommended that managers require acceptable medical documentation to those employees who appear to be setting a pattern of calling in sick prior to leaving the Postal Service.  Below is the [Employment and Labor Manual] reference on the definition of acceptable medical documentation and the ramifications of not providing it.
>
> **513.364 Medical Documentation or Other Acceptable Evidence:**
> When employees are required to submit medical documentation, such documentation should be furnished by the employee's attending physician or other attending practitioner who is performing within the scope of his or her practice.  The documentation should provide an explanation of the nature of the employee's illness or injury sufficient to indicate to management that the employee was (or will be) unable to perform his or her normal duties for the period of absence.  Normally, medical statements such as "under my care" or "received treatment" are not acceptable evidence of incapacitation to perform duties.
>
> Superiors may accept substantiation other than medical documentation if they believe it supports approval of the sick leave request.
>
> **513. 365 Failure to Furnish Required Documentation**
>
> If acceptable substantiation of incapacitation is not furnished, the absence may be charged to annual leave, LWOP, or AWOL.
>
> Id. at ¶ 25.

---

[4] During her deposition, Serrano testified that she learned of the reassignment nine or ten months before retiring, and of the early retirement package seven or eight months before retiring.  Once she learned of the early retirement package she decided to retire rather than to move to Miami. SMF ¶ 28 (Docket No. 59 at p. 8).  She retired from the Postal Service on May 31, 2011. SMF ¶ 37.

### D. **Documentation**

On May 3, 2011, Borrero sent Serrano a letter titled "Letter of Warning" informing Serrano that the documentation she had submitted in support of her sick leave requests did not comply with the Postal Service's sick leave policy as outlined in its Employment and Labor Manual Section 513.364, "Medical Documentation or Other Acceptable Evidence."

On May 16, 2011, Serrano submitted a sick leave request to cover absences from May 16, 2011 through May 31, 2011, also with a doctor's note stating "rest 5/16/11- 5/31/11." Id. at ¶ 29. In response, Borrero informed her that she had not provided him with the information requested in his May 3, 2011 letter; that her request for sick leave was not approved due to the lack of acceptable medical documentation; and that her absences would be recorded as leave without pay. Serrano contacted an EEO counselor, and filed a formal complaint of discrimination with the Postal Service. Id. at ¶ 5. The Postal Service investigated the complaint, concluding that Serrano had not been subjected to any unlawful discrimination. Id. at ¶ 7. This case ensued.

## III.   **DISCUSSION**

In essence, Serrano contends Borrero discriminated against her on the basis of sex and age by creating a hostile work environment that led her to retire from the Postal Service; by discriminating against her by docking her one (1) week of pay after she decided to retire; and by retaliating against her for having complained of discrimination (Docket No. 1, at ¶ 5, 6, 9, 10; and Docket No. 64, at ¶ 5, 6, 8, 12).

### A. **Constructive Discharge/Hostile Work Environment**

Serrano claims she retired from the Postal Service because of Borrero's hostility and abuse towards her, and his extreme favoritism for male coworkers (Docket No. 1 at ¶ 5, 6). Title VII prohibits discrimination in the terms, conditions, or privileges of employment on the basis of sex.

<u>Serrano</u> v. <u>Donahoe</u>
Civil No. 12-1055 (PAD)
Opinion and Order
Page 7

<u>University of Texas</u> v. <u>Nassar</u>, 570 U.S. ---, 33 S.Ct. 2517, 2526, 186 L.Ed.2d 503 (2013).  The

ADEA makes it unlawful for an employer to discriminate against any individual with respect to

his compensation, terms, conditions, or privileges of employment because of such individual's age.

<u>Gross</u> v. <u>FBL Financial Services, Inc.</u>, 557 U.S. 167, 176 (2009).

　　　These statutes bar employers from explicitly dismissing employees on account of protected

characteristics.  Since the employer cannot accomplish by indirection what the law prohibits it

from doing directly, the statutes recognize constructive discharge claims.  <u>See</u>, <u>Pennsylvania State</u>

<u>Police</u> v. <u>Suders</u>, 542 U.S. 133-134, 142-143 (2004) (constructive discharge under Title VII);

<u>Suárez</u> v. <u>Pueblo Intern., Inc.</u>, 229 F.3d 49, 54 (1st Cir. 2000)(constructive discharge under ADEA).

　　　In a constructive discharge case, the plaintiff has resigned or retired from her employment

but has done so after having been subjected to working conditions so difficult or unpleasant that a

reasonable employee in her position would have felt compelled to leave the job.  <u>Meléndez-Arroyo</u>

v. <u>Cutler-Hammer de P.R. Co., Inc.</u>, 273 F.3d 30, 36 (1st Cir. 2001); <u>Serrano-Cruz</u> v. <u>DFI</u>, 109 F.3d

23, 26 (1st Cir. 1997); <u>Alicea-Rosado</u> v. <u>García-Santiago</u>, 562 F.2d 114, 119 (1st Cir. 1977).  In

that situation, the employee's decision to leave the job is assimilated to a formal or actual discharge

for remedial purposes.  <u>Pennsylvania State Police</u>, 542 U.S. at 141, 148.  The inquiry is objective.

<u>Id</u>.  It is not satisfied solely by the employee's subjective beliefs, no matter how sincerely held.

<u>Suárez</u>, 229 F.3d at 54.

　　　To show that a hostile work environment resulted in a constructive discharge, a plaintiff

must show (1) that a hostile work environment existed; and, (2) that the working conditions were

even more egregious than those defining a hostile workplace.  <u>Herron</u> v. <u>DaimlerChrysler Corp.</u>,

388 F.3d 293, 303 (7th Cir. 2004); <u>Marrero</u> v. <u>Goya of Puerto Rico, Inc.</u>, 304 F.3d 7, 28 (1st Cir.

Serrano v. Donahoe
Civil No. 12-1055 (PAD)
Opinion and Order
Page 8

2002).  The variation between the two elements derives from the severity of the working conditions

defining them.  Pennsylvania State Police, 542 U.S. at 129.

A hostile work environment exists when the complained-of conduct is so severe or

pervasive as to alter the conditions of plaintiff's employment and create an abusive work

environment.  The conduct must be both objectively and subjectively offensive, such that a

reasonable person would find it abusive, and the plaintiff in fact perceived it to be so.  Additionally,

it must be based on plaintiff's statutorily protected characteristics.  Ponte v. Steelcase, Inc., 741

F.3d 310, 319-320 (1st Cir. 2014);  Rivera v. Puerto Rico Aqueducts and Sewers Authority, 331

F.3d 183, 188 (1st Cir. 2003).

Workplace conduct is not measured in isolation.  Clark County School Dist. v. Breeden,

532 U.S. 268, 270 (2001).  In determining whether a reasonable person would find particular

conduct hostile or abusive, a court must null the totality of circumstances, including the severity

and frequency of the conduct; whether it was physically threatening or humiliating or a mere

offensive utterance;  and whether it unreasonably interfered with the employee's work

performance.  Carmona-Rivera v. Puerto Rico, 464 F.3d 14, 19 (1st Cir. 2006); Ponte, 741 F.3d at

319-320.

To support liability, those circumstances must reflect a workplace permeated with

discriminatory intimidation, ridicule, and insult.  National R.R. Passenger Corporation v. Morgan,

536 U.S. 101, 116 (2002); Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 78 (1998).

Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work

environment, an environment that a reasonable person would find hostile or abusive, is beyond

statutory purview.  Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993); Oncale, 523 U.S. at

81.

The standard is sufficiently demanding to ensure that employment discrimination statutes not become a general civility code in the workplace.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).  The function of the court is one of screening, that is, to determine whether, on the particular facts before it, a reasonable jury can reach the conclusion that a hostile work environment exists.  Noviello v. City of Boston, 398 F.3d 76, 94 (1st Cir. 2005).

In turn, a constructive discharge predicated on a hostile work environment builds upon that environment to reach a higher degree of egregiousness.  In that case, a reasonable person would find the hostile working conditions so unbearable, that continuing in the position while attempting to seek redress would be intolerable.  See, Pennsylvania State Police, 542 U.S. at 133-134, 146-147 (a hostile-environment constructive discharge claim entails more than a hostile work environment; a plaintiff who advances such a claim must additionally show working conditions so intolerable than a reasonable person would have felt compelled to resign); Marrero, 304 F.3d at 28 (a hostile work environment without more will not always support a finding of constructive discharge; working conditions must have been so unpleasant that staying on the job while seeking redress would have been intolerable).

Against these legal principles, Serrano argues the record supports a finding of actionable hostility justifying her decision to retire in that:

1.  Borrero used a harsh tone of voice with her but not with male coworkers, who were in their thirties;

2.  Once, Borrero shouted at her over the speakerphone to perform a particular task the way he had instructed her to do it, not the way she actually did it.  She never heard him shout at male employees;

3.  During a sales team meeting Serrano confronted Borrero about how he wanted sales conducted.  He became annoyed and hostile with her because according to Serrano, she "confronted him in the

> presence of the other two employees… and since he was the boss, he didn't allow that;"

4. Borrero would greet male employees, touch them, and go out with them but would not touch her and excluded her from those outings. Serrano would not have felt conformable if he had touched her or invited her out.

5. Borrero handed out gift certificates or vouchers in reward for sales; Serrano received less valuable rewards than male employees.

(Docket No. 64 at ¶¶ 12, 13, 14, 16, 17).  Viewed objectively, these assertions do not, singly or in combination, provide a sufficient foundation for Serrano's understanding that a hostile work environment effectively existed, or that she was led or forced to retire from her employment with the Postal Service.

First, Serrano may have felt uncomfortable with Borrero, but "discomfort is not the test." Ponte, 741 F.3d at 320.  Rudeness or ostracism are not usually enough to support hostile work environment allegations.  Carmona-Rivera, 464 F.3d at 19.  Workers are expected to have thick skins.  Rosario v. Dept. of the Army, 607 F.3d 241, 247 (1st Cir. 2010); Suárez, 229 F.3d at 54. For the same reason, that Serrano's interactions with Borrero may be described as brusque, uncivil, or even mildly humiliating to the point of suggesting an uncomfortable and tense working relationship between them, they are not enough to establish an objectively hostile and abusive work environment entitling Serrano to relief.  Colón-Fontánez v. Municipality of San Juan, 660 F.3d 17, 44 (1st Cir. 2011).

Second, rough and rude orders do not support a finding of hostile work environment.  Arce v. Potter, 818 F. Supp.2d 402, 412-413(D.P.R. 2011).  A supervisor's decision not to socialize with an employee does not rise to the level required to demonstrate actionable workplace hostility. Douglas v. J.C. Penney Co, Inc., 474 F.3d 10, 25 (1st Cir. 2007).  An allegedly unprofessional

managerial approach and accompanying efforts to assert authority are not the focus of discrimination laws. Lee-Crespo v. Schering-Plough del Caribe, Inc., 354 F.3d 34, 46-47 (1st Cir. 2003); Colón-Fontánez, 660 F.3d at 44.

Third, Serrano has not produced specific factual information based on personal knowledge to support her view that the rewards she received from Borrero were less valuable than those given to male or younger coworkers.[5]  The assertion merely reflects Serrano's "subjective speculation and suspicion" that she was treated in an unfair way. Mariani-Colón v. Department of Homeland Security ex rel. Chertoff, 511 F.3d 216, 222 (1st Cir. 2007).  Proof of more than a plaintiff's subjective belief that she was the target of unlawfulness is required to prove discrimination. Id.

Fourth, there is no indication that Borrero's behavior was physically threatening or unreasonably interfered with Serrano's job performance.  In fact, he gave her three (3) satisfactory evaluations, with no negative results. See, Filipovic v. K & R Exp. Systems, Inc., 176 F.3d 390 (7th Cir. 1999)(complained of names and slurs not physically threatening); Pomales v. Celulares Telefónica, 447 F.3d 79, 84 (1st Cir. 2006)(summary judgment where there was no evidence that complained of conduct negatively affected plaintiff's ability to perform her job functions); Lee-Crespo, 354 F.3d at 43 (summary judgment dismissing claim brought by a plaintiff who complained of workplace hostility; alleged hostility was not an impediment to plaintiff's work performance).  No foundation has been established to conclude that Serrano was subjected to a hostile work environment or could not have stayed on the job instead of retiring while seeking redress with the employer.

---

[5] In her deposition Serrano asserted to have assumed from a conversation with her male co-workers that the envelopes they received contained a gift certificate of $50.00 for a restaurant.  Upon being questioned by the defendant's attorney, she admitted to never having seen the contents of the envelopes, and that the male co-workers never told her what the contents were. (Docket No. 59 Exh. 12, at p. 2).

Serrano v. Donahoe
Civil No. 12-1055 (PAD)
Opinion and Order
Page 12

## B. **Discrimination**

In general, employment discrimination may be analyzed as two (2) forms of employer conduct: (1) conduct that explicitly alters terms or conditions of employment; and (2) conduct that constructively does so.  The former is associated with adverse employment actions; the latter, with hostile work environments.  Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 752 (1998).  As discussed, Serrano was not subjected to a hostile work environment.  But liability may be found if her remaining allegations satisfy the threshold required to sustain a disparate treatment claim predicated upon an adverse employment action.

Adverse employment actions are the type of actions that a supervisor normally is empowered to take, and which result in a material disadvantage to the employee.  Singletary v. Missouri Dept. of Corrections, 423 F.3d 886, 891 (8th Cir. 2005).  Some of them – known as tangible employment actions – produce a significant change in employment status, as in the case of a discharge; a demotion; or a transfer or reassignment with significantly diminished responsibilities, a substantial decrease in compensation, or a marked lessening in the quality of working conditions.  Pennsylvania State Police, 542 U.S. at 137.  Other types of adverse actions do not carry that level of change into employment status.  However, they require more than a mere annoyance or inconvenience to be considered materially adverse.  Sallis v. University of Minn., 408 F.3d 470, 476 (8th Cir. 2005).  When accompanied by colorable evidence of discriminatory treatment, they entitle plaintiff to relief.  With this backdrop, Serrano points to three (3) instances of alleged discrimination.[6]

---

[6]  These instances of asserted discriminatory treatment are insufficient to modify the conclusion that no hostile work environment existed, or that Serrano was not constructively discharged.  As explained in the text, they do not reach the threshold required to reflect a discriminatory change in the terms and conditions of Serrano's employment.

1.  Warning Letter

Serrano alleges that after she decided to retire she so informed Borrero, who went ballistic, berated her for her action, and on that same day sent her a "letter of warning" denying a sick-leave request for lack of adequate documentation to support the request.  She argues that even though Borrero asserted during the EEO investigation that it was a mistake to consider the letter a "letter of warning," the Postal Service did not withdraw the letter from her file.  She claims these actions were in violation of sex and age discrimination laws (Docket No. 64 at ¶¶ 6-7, and 19).

That the letter was titled "letter of warning" lacks practical significance.  It did not refer to any discipline or misconduct.  SMF ¶29.  Even reprimands (and the letter at issue cannot be so considered), are deemed adverse employment actions only when the employer uses them as a basis for materially changing the terms and conditions of the employee's job for the worse.  Elnashar v. Speedway Super America, LLC, 484 F.3d 1046, 1058 (8th Cir. 2007); Medina v. Income Support Div., New Mexico, 413 F.3d 1131, 1137 (10th Cir. 2005).  The title did not have any such effect.  Without that predicate, it cannot be considered materially adverse.

2.  Notice Letters

Serrano considers it inappropriate for Borrero to have sent her twice – by first-class and certified mail – on May 25, 2011, a letter notifying her that since she had not submitted the requested medical documentation in support of her sick leave request, the absences would be recorded as leave without pay (Docket No. 59 at ¶ 33; and Docket No. 64 at ¶ 17).  There is nothing inappropriate (1) in informing an employee in writing of the employer's decision respecting a request for sick leave, (2) in sending the corresponding communication by first-class mail, and (3) in ensuring receipt of the letter through certified mail.  That Serrano received the letter twice did

not result in any material harm.   Perhaps she felt inconvenienced, but more than mere inconvenience is required to prevail under employment discrimination statutes.

### 3.   Docking of Pay

Serrano claims Borrero's decision to dock her a week's pay was discriminatory (Docket No. 64 at ¶ 8).  Because Serrano lacks direct evidence of discrimination, she may rely on the burden shifting framework based on McDonnell Douglas v. Green, 411 U.S. 792 (1973).   Under this framework, a plaintiff must initially establish a *prima facie* case of discrimination.  The defendant must then articulate a legitimate, non-discriminatory reason for the challenged action.  Having done so, the burden shifts back to the plaintiff, who must prove by a preponderance of the evidence that the employer's asserted reason is a pretext for unlawful discrimination.  Johnson v. University of Puerto Rico, 714 F.3d 48, 53-54 (1st Cir. 2013); Douglas, 474 F.3d at 14.

The Court will assume that Serrano has made out a *prima facie* case.  But at the end of the day, she cannot show that the employer's decision is a pretext for discrimination.  Pretext analysis is more demanding than the assessment of whether a *prima facie* case has been established. Mariani-Colón, 511 F.3d at 222.  It moves the inquiry to a new level of specificity.  Kosereis v. Rhode Island, 331 F.3d 207, 213 (1st Cir. 2003).  In assessing pretext, the focus is on the perception of the decisionmaker, and on whether he honestly believed the stated reason to be credible. Adamson v. Walgreens Co., 750 F.3d 73, 79 (1st Cir. 2014); Mesnick, 950 F.2d at 824.

In this model, it is not enough for a plaintiff merely to impugn the veracity of the employer's justification.  Meléndez v. Autogermana, 622 F.3d 46, 52 (1st Cir. 2010); Medina Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Plaintiff must produce evidence that the employer did more than get it wrong.  Johnson v. Weld County, Colo., 594 F.3d 1202, 1211 (10th Cir. 2010).  She must elucidate specific facts which would enable a jury to find

Serrano v. Donahoe
Civil No. 12-1055 (PAD)
Opinion and Order
Page 15

that the reason given is not only a sham, but a sham intended to cover up the employer's real motive: discrimination. Meléndez, 622 F.3d at 52; Mesnick, 950 F.2d at 824. Evidence contesting the factual underpinnings of the reasons for the decision proffered by the employer is insufficient, without more, to present a jury question. Morgan v. Massachusetts General Hosp., 901 F.2d 186, 191 (1st Cir. 1990).

It is undisputed Borrero decided to dock Serrano's sick pay because she failed to submit adequate documentation in support of the leave application, contrary to what in Borrero's view, was required by the Postal Office regulation described in the email of April 29, 2011 (Docket No. 64 at ¶¶ 25, 29, 32).[7] On its face, the reason asserted is valid, and non-discriminatory. See, Von Gunten v. Maryland, 243 F.3d 858, 869 (4th Cir. 2001)(legitimate for employer to inform employee that she needed to provide written documentation for sick leave).

Serrano attempts to discount Borrero's explanation, arguing that the document upon which he acted is inadmissible hearsay. In particular, she points out that when Borrero received copy of the Postal Service regulations described in the email of April 29th, he was unsure on whether the regulations required more documentation than Serrano had provided in order to support a paid sick-leave request. As a result, he reached out to Ms. Kandi Robinson, of Labor Relations. Ms. Robinson forwarded Borrero's inquiry to Ms. Marylin Lake, who sent it to Ms. Sara Mock, the person who handled referrals related to Employee and Labor Manual guidelines, according to

---

[7] Serrano claims the document is inadmissible, pointing out that it was produced after discovery had ended and after the pretrial. As such, she further contends, she was unable to cross-examine Borrero or anyone at the Postal Office as to this document. Docket No. 64 at ¶ 21. She requests that the document be excluded as sanction under Fed. R. Civ. P. 37. At Docket No. 33, the Court granted the Postal Service's request to amend the Pretrial Order ("PO") to list he document in the PO, after considering plaintiffs objections to Postal Service's request. The Court finds no reason to alter that ruling. In any event, if plaintiff had considered it necessary to conduct additional discovery after the email was produced, Fed.R.Civ.P. 56(d) was available for that purpose. The record, however, contains no request under that rule seeking discovery to adequately oppose defendant's motion for summary judgment. Rivera-Torres v. Rey-Hernández, 502 F.3d 7, 10-11 (1st Cir. 2007).

<u>Serrano</u> v. <u>Donahoe</u>
Civil No. 12-1055 (PAD)
Opinion and Order
Page 16

Postal Service regulations.  Ms. Mock advised that "rest" (Serrano's reason to request the sick leave) was not sufficient to support the leave request.  Ms. Marilyn Lake so informed Ms. Robinson, who in turn sent Borrero the following email on May 25, 2011:

> Jose
>
> I spoke to Marilyn today and she says Gladys can be LWOP since she did not provide documentation. The FMLA paperwork has nothing to do with the request for documentation and we have to follow ELM guidelines.  The statement Gladys sent that says she needs to rest is insufficient. Gladys" (Serrano) can be LWOP (leave without pay) since she did not provide documentation.

Borrero acted accordingly, denying Serrano's request for lack of documentation.  Serrano objects to Ms. Robinson's email as inadmissible hearsay (Docket No. 64 at ¶ 22-23).

Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  Fed. R. Evid. 801 (c).  Even if Serrano were objecting to the truth of the opinion asserted in the email on whether Postal Service regulations required more than "need to rest" to support a sick leave request, it would not result in the email's exclusion.

An out-of-court statement is not hearsay when used to show motive or state of mind. <u>Ramírez-Rodríguez</u> v. <u>Boehringer Ingelheim Pharmaceuticals, Inc.</u>, 425 F.3d 67, 76-77 (1st Cir. 2005); <u>Cameron</u> v. <u>Community Aid</u>, 335 F.3d 60, 65-66 (2d Cir. 2003).  From this perspective, the objected email confirms why Borrero made the decision that Serrano has challenged, reflecting his state of mind.  Thus, to be admissible, it need not be accepted as evidence of the correctness of the interpretation Borrero relied on to place Serrano on leave without pay.  So considered, the email does not qualify as excludable hearsay.  <u>See</u>, <u>Ramírez Rodríguez</u>, 425 F.3d at 76-77 (report and statements not considered hearsay since offered to explain the basis for employer's decision to

terminate plaintiff's employment, rather than to prove that plaintiff had engaged in misconduct);

Cameron, 335 F.3d at 65-66 (statements not hearsay because used to prove decision-maker's state

of mind).

Serrano contends the reason for Borrero's decision should be rejected for being no reason

at all except discrimination.  She points out that Kandy Robinson testified in her deposition that

she did not know why "need for rest" was insufficient to support a sick leave request, other than

because of a conversation she had with Marilyn Lake.  In turn, Ms. Lake testified in her depositon

that she did not recall any conversation with Ms. Robinson regarding Serrano, and that she had no

independent recollection of any part of this case except for what is in the file.  Sara Mock no longer

works with the Postal Service and has not been announced as a witness (Docket No. 64 at ¶ 22-

27).

Serrano claims the statements attributed to Mock, Lake, and Robinson are hearsay;

implausible, weak, incoherent, and contradictory; and therefore, pretextual.  From her perspective,

there is no reason for Borrero to have requested more documentation than that plaintiff provided,

except discrimination. Id. at ¶ 32).[8]  The argument does not reach that far, since pretext focuses

primarily on the perception of the decisionmaker and whether he honestly believed the stated

reason to be credible.  Adamson, 750 F.3d at 79; Mesnick, 950 F.2d at 824.

Challenging the factual underpinnings of the reasons for the decision in question does not

suffice to establish pretext.   Morgan, 901 F.2d at 191.   Weaknesses, incoherencies, or

contradictions may serve to show pretext, unless the record conclusively reveals that the real

---

[8] There has been no allegation or proof that Robinson, Lake, or Mock harbored a discriminatory animus toward Serrano and intentionally led the decision making process into unlawfully discriminating against her on account of her sex or age.  Staub v. Proctor Hospital, --- U.S. ---, 131 S.Ct. 1186, 1192, 173 L.Ed.2d 144 (2011).

motive for the decision at issue was nondiscriminatory.  Collazo-Rosado v. University of Puerto Rico, --- F.3d ---- (1st Cir. 2014), 2014 WL 4290420, *5 (Sept. 2, 2014).  For that reason, in evaluating whether an employer's stated reasons for an adverse action are pretextual, the courts' concern is not whether the plaintiff was in compliance with the rules, but whether her employer believed that she was.  Mariani-Colón, 511 F.3d at 223.  Therefore, the alleged inaccuracy of Robinson's opinion does not matter if Borrero believed it.  In the end, Serrano's characterization of that opinion is immaterial because it does not factually call into question Borrero's belief that what he was informed was true.

Honesty may be put in question by certain post-hoc explanations, or by shifting explanations that are so inconsistent as to be unworthy of credence.  Dennis v. Columbia Colleton Medical Center, Inc., 290 F.3d 639, 646-647 (4th Cir. 2002); Collazo-Rosado, 2014 WL, at *5.  The record, however, contains no such explanations, but rather consistency in the asserted basis for Borrero's decision.  See, Wallace v. O.C. Tanner Recognition, Co., 299 F.3d 96, 101-102 (1st Cir. 2002)(summary judgment where plaintiff failed to generate genuine dispute about honesty of employer's belief); Leibforth v. Belvidere Nat. Bank, 337 F.3d 931, 934 (7th Cir. 2003)(same).  Casting doubt on the correctness of the employer's proffered reason is insufficient to establish pretext.  Plaintiff must produce evidence that the employer did more than get it wrong. Johnson v. Weld County Colo., 594 F.3d 1202, 1211 (10th Cir. 2010); Menard v. First Security Services, 848 F.2d 281, 287 (1st Cir. 1988).

At another level, there has been no showing that Borrero treated comparable employees outside of her protected class more favorably.  The core of a discrimination action is the assertion that the defendant treated plaintiff less favorably than others on account of protected characteristics.  In this sense, she must point toward the treatment received by those other

employees.  Windross v. Barton Protective Services, 586 F.3d 98, 103-104 (1st Cir. 2009);

Kosereis, 331 F.3d at 214.  Those employees must have been similarly situated to plaintiff in all

relevant respects, such that they must have dealt with the same supervisor, and must have engaged

in the same conduct as she.  Rathbun v. Autozone, Inc., 361 F.3d 68, 76 (1st Cir. 2004); Benoit v.

Technical Manufacturing Corporation, 331 F.3d 166, 174 (1st Cir. 2003); Rivas-Rosado v. Radio

Sack, Inc., 312 F.3d 532, 535 (1st Cir. 2002); Lowery v. Hazelwood, 244 F.3d 654, 660-661 (8th

Cir. 2001); Mitchell v. Toledo, 964 F. 2d 577, 583 (6th Cir. 1992); Mariani-Colón, 511 F.3d at 221-

222.

Serrano has made no such showing, with facts sufficient to establish that in denying her

sick-paid leave request due to lack of supporting documentation, Borrero treated employees

outside of her protected classes more favorably than he treated her.  To that end, she offered no

evidence that (1) male or substantially younger coworkers requested sick leave citing "need to

rest" after Borrero received the email of April 29, 2011; and (2) Borrero approved the request

rather than docking one (1) week's pay.  On these facts, there is no reasonable basis to conclude

that Borrero was motivated by Serrano's sex, or that he acted because of Serrano's age in docking

her one week's pay.

**C. Retaliation**

Serrano also claims that Borrero docked her the week's pay in retaliation for her EEO

activity of June 2011 (Docket No. 1 at ¶ 8-10; Docket No. 64 at ¶ 8).  Both ADEA and Title VII

contain anti-retaliation provisions with practically identical language and purpose.  See, 29 U.S.C.

§ 623(d) and 42 U.S.C. § 2000e–3.  Correspondingly, the Supreme Court has recognized that

"Congress designed the remedial measures in these statutes to serve as a spur or catalyst to cause

employers to self-examine and to self-evaluate their employment practices and to endeavor to

eliminate, so far as possible, the last vestiges of discrimination." McKennon v. Nashville Banner Pub. Co., 513 U.S. 352, 358 (1995).

Retaliation claims based on circumstantial evidence are evaluated using the McDonnell Douglas burden-shifting framework. Ponte, 741 F.3d at 321. To establish a *prima facie* case of retaliation, a plaintiff must show that: (1) she engaged in protected conduct; (2) she suffered an adverse employment action; and (3) that a causal nexus exists between the protected conduct and the adverse action. Ramírez-Rodríguez v. Boehringer Ingelheim Pharmaceuticals Inc., 425 F.3d 67, 84 (1st Cir. 2005); Ponte, 741 F.3d at 321.

If the plaintiff makes a *prima facie* showing of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for its decision. Once the defendant presents such a reason, the ultimate burden falls on the plaintiff to show that the employer's proffered reason is a pretext, and that the job action was the result of defendant's retaliatory animus resulting from the employee's participation in protected activity. Roman v. Potter, 604 F.3d 34, 39 (1st Cir. 2010).

To the extent Serrano engaged in EEO activity, she participated in protected conduct. Likewise, losing one-week's pay qualifies as an adverse employment action in the present case. But there has been no showing of causality. Causality assumes a link between the decision-maker, the protected activity, and the adverse action. The link consists of knowledge. To that end, the retaliating party must be aware of the protected activity that he is believed to be retaliating against. Medina-Rivera v. MVM, Inc., 713 F.3d 132, 139 (1st Cir. 2013); Ponte, 741 F.3d at n. 11. Otherwise, there would be no causal nexus between the challenged action and the activity.

Such is the case here, as there is no evidence that Borrero had any knowledge of Serrano's EEO activity when he made the decision that she has challenged. Moreover, Borrero made the

decision to put Serrano on leave without pay in May 2011, before Serrano's EEO activity of June 2011.  A plaintiff must engage in statutorily protected activity before an employer can retaliate against her for engaging in that activity.  Herron, 388 F.3d at 302.  In these circumstances, there is no cognizable showing of a causal connection necessary to support a retaliation claim.  Bennett v. Saint-Gobain Corp., 507 F.3d 23, 32 (1st Cir. 2007).

Even if Serrano had made a *prima facie* case of retaliation, which she did not, Donahue met his burden to establish a legitimate, non-retaliatory reason for Borrero's decision.  As discussed, Borrero honestly believed that additional documentation was required by Postal Service regulations.  That being so, the final burden rests with Serrano to show that this proffered reason was a mere pretext for retaliation.  Alvarado v. Donahue, 687 F.3d 453, 458 (1st Cir. 2012).  Serrano has not satisfied this burden with evidence sufficient to establish that an adverse action was taken for the purpose of retaliating against her for engaging in protected activity.

## IV.   CONCLUSION

Where a nonmovant bears the burden of proof, to defeat summary judgment she must point to evidence significantly probative of specific facts sustaining all of the elements of the nonmovant's claim(s).  Johnson, 714 F.3d at 52.  The evidence submitted in this case is not enough to establish an objectively hostile work environment, prohibited discriminatory treatment, retaliation, or a constructive discharge.  Defendant is entitled to prevail as a matter of law.  Consequently, the Court GRANTS the motion for summary judgment at Docket No. 60, and DISMISSES the complaint.  Judgment shall be entered accordingly.

Serrano v. Donahoe
Civil No. 12-1055 (PAD)
Opinion and Order
Page 22


**SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of September, 2014.


S/Pedro A. Delgado-Hernández
PEDRO A. DELGADO HERNANDEZ
U.S. DISTRICT JUDGE